UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BERNARD MATTHEWS, et al.

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA, et al.

    Defendants.

Civil Action No. 09-2206 (JDB)

## MEMORANDUM OPINION

Bernard Matthews, William Christopher Malloy, Kevin T. Anderson, Brian Covington, and Derrick Craig each allege that officers of the Metropolitan Police Department ("MPD") unlawfully strip searched them. They therefore have brought this action against the District of Columbia and several named and unnamed officers of the MPD, alleging violations of the U.S. Constitution and District of Columbia common law. Before the Court are the District of Columbia's motion to dismiss and the individual officers' motion to dismiss. For the reasons detailed below, the Court will grant in part and deny in part both motions.

## BACKGROUND

Plaintiffs' claims arise out of a series of strip searches that allegedly occurred in 2006 and 2007. William Christopher Malloy offers that on February 3, 2007, a group of MPD officers, which included defendant Officers David Randolph and Semus Bracket, approached him and ordered him to submit to a search. Compl. ¶¶ 19, 21. "After an initial search of Malloy's pockets turned up no contraband, Officer Randolph instructed Malloy to turn around and place his hands on a nearby vehicle." Compl. ¶ 20. Officer Randolph then cut the string on Malloy's sweatpants

with a knife, Compl. ¶ 21, and "removed Malloy's underwear, spread his buttocks, and began to probe around between Malloy's buttocks near his anus," Compl. ¶ 22. He also "conducted a search around Malloy's testicles, penis and foreskin," Compl. ¶ 24. Malloy alleges that "[t]his personal intrusion was conducted in a public area and in the presence of other civilian individuals," Compl. ¶ 26, and that as a result of the search he "has experienced and continues to experience emotional trauma," Compl. ¶ 28. The remaining plaintiffs allege materially similar searches.

As a result of the alleged strip searches, plaintiffs have sued the District of Columbia for constitutional violations pursuant to 42 U.S.C. § 1983, and for common law assault, battery, intentional infliction of emotional distress ("IIED"), and negligent training and supervision. They also have sued both named and unnamed MPD officers for constitutional violations pursuant to 42 U.S.C. § 1983, and for common law assault, battery, conspiracy, negligence, false arrest, false imprisonment, and IIED.

**STANDARD OF REVIEW**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S.

at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm, Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further

factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

### I. The Constitutional Claims

#### A. Plaintiffs' Section 1983 Claim Against the District

"[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry." Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "First, the court must determine whether the complaint states a claim for a predicate constitutional violation." Id. Second, and if so, "the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." Id.

##### 1. *Predicate Constitutional Violation*

Plaintiffs assert that the District violated their Fourth Amendment right to be free from unreasonable searches, their Fifth Amendment right to due process, and their First Amendment right to peaceably assemble. The District does not contend that plaintiffs' complaint fails to state a Fourth Amendment claim. It does argue, however, that plaintiffs cannot proceed on either their Fifth Amendment or their First Amendment claims.

The Court agrees that plaintiffs do not state a Fifth Amendment violation. Where a section 1983 claim alleging police misconduct "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, . . . rather than under a 'substantive due process' approach [of the Fifth Amendment]." Graham v. Connor, 490 U.S. 386, 394 (1989). Here, plaintiffs' Fifth Amendment

claim is predicated entirely on the detention and strip search of plaintiffs. Compl. ¶ 62(c) ("The public strip and cavity searches of Plaintiffs deprived Plaintiffs of their right to liberty without due process of law, in violation of the Fifth Amendment."). Plaintiffs' Fifth Amendment claim, then, merges with their Fourth Amendment claim.

Plaintiffs do, however, state a First Amendment claim. The District argues that plaintiffs' complaint fails to do so because the First Amendment "only protects those engaged in speech . . . or 'expressive conduct,'" and plaintiffs were not involved in either. District's Mem. in Supp. of Mot. to Dismiss ("District's Mem.") [Docket Entry 6], at 16. The District is incorrect. See U.S. Const., amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). And courts have recognized that section 1983 suits may be based on provisions of the First Amendment other than the right to free speech and expressive conduct. See, e.g., Van Order v. Perry, 545 U.S. 677 (2005) (Establishment Clause); Allee v. Medrano, 416 U.S. 802 (1974) (Free Speech and Assembly Clauses). Because the District's argument is based entirely on an incorrect view of the scope of the First Amendment, plaintiffs have adequately stated a predicate First Amendment violation.

  2. *Custom or Policy*

A municipality, such as the District, may be held liable under section 1983 only "where the municipality itself causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). Thus, municipalities cannot be liable under section 1983 pursuant to a theory of "[r]espondeat superior or vicarious liability." Id.; see also Monell v.

Department of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694-95 (1978). Rather, "municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom." Warren v. Dist. of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004); see also Monell, 436 U.S. at 694. And the key "inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Harris, 489 U.S. at 385.

A municipality's custom or policy may "cause" a constitutional violation in several different ways. "[F]or instance, the municipality or one of its policymakers [could have] explicitly adopted the policy that was 'the moving force of the constitutional violation.'" Warren, 353 F.3d at 39 (quoting Monell, 436 U.S. at 694). "Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom," thereby leading to a violation. Id. Or the "municipality's conduct may evidence a 'deliberate indifference' to the rights of its inhabitants." Harris, 489 U.S. at 388; accord Baker, 326 F.3d at 1306.

The Court must consider plaintiffs' complaint as a whole when resolving the District's motion to dismiss. See Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 94 (D.D.C. 2006); Kivanc v. Ramsey, 407 F. Supp. 2d 270, 274 (D.D.C. 2006). Plaintiffs allege that "it is the custom of the MPD Officers to conduct strip and cavity searches of citizens of the District of Columbia publicly and in contravention of the written policy [promulgating procedures for strip searches]." Compl. ¶ 64. And they offer, in the section of their complaint addressing their negligent supervision claim, that "[t]he District of Columbia, Chief Ramsey and Chief Lanier, recklessly and without regard for the rights of others, breached their duty to properly train, supervise, investigate, and correct the improper actions of its employee Police Officers." Compl.

¶ 112. A municipality's failure to train or supervise its employees adequately can constitute a "policy or custom" sufficient to trigger section 1983 liability "when the frequency of constitutional violations makes it obvious to the municipality that additional training or supervision is necessary." Fernandors v. Dist. of Columbia, 382 F. Supp. 2d 63, 76 (D.D.C. 2005); accord Harris, 489 U.S. at 390 n.10 (failure to train may be characterized as "deliberate indifference" to constitutional rights).

     Here, plaintiffs allege that five different individuals were subjected to invasive public strip searches by numerous MPD officers on six different occasions and in six different locations in 2006 and 2007.[1] These searches occurred even though the MPD has issued a general order detailing when strip searches are permissible, and indicating that strip searches are prohibited in public areas. See District's Mem., Ex. D (General Order Series/Number GO-PCR-502.01), at 4. Based on the number of instances of alleged unlawful misconduct, and the number of officers involved, it is "plausible," Iqbal, 129 S. Ct. at 1949, that the officers' behavior resulted from the District's failure to train or supervise its employees. Indeed, the Court can plausibly infer from the facts animating plaintiffs' allegations that the strip searches were not the result of rogue officers acting contrary to their training. In other words, "[g]iven the variety of abuses, the number of officers, and time period during which these abuses allegedly took place," plaintiffs have raised an inference that "the combination of these factors can demonstrate that the District of Columbia was 'deliberately indifferent' to plaintiff's constitutional rights." See Kivanc, 407 F. Supp. 2d at 280; see also Fernandors, 382 F. Supp. 2d at 76 ("municipal liability for failure to train or supervise [where] the frequency of constitutional violations makes it obvious to the

---

[1] Brian Covington alleges that he was strip searched on two occasions. Compl. ¶¶ 36, 40.

municipality that additional training or supervision is necessary").

In denying the District's motion to dismiss, the Court is not ruling on whether plaintiffs' allegations, if proven, would be sufficient to establish that the District actually failed to train or supervise its employees. Indeed, to prevail on their section 1983, "plaintiffs must . . . establish that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need." Rogala v. Dist. of Columbia, 161 F.3d 44, 56 (D.C. Cir. 1998); see also Fernandors, 382 F. Supp. 2d at 76 (standard for establishing municipal liability under a failure to supervise or train theory is "exacting"). At this stage of the litigation, and drawing all "reasonable inference[s]" in plaintiffs' favor, the Court merely concludes that plaintiffs have "state[d] a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).

B.     Plaintiffs' Section 1983 Claims Against the Individual Officers

To bring a section 1983 claim against an individual, a plaintiff must show that (1) he was deprived of a federal right by (2) an individual acting under color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); accord Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937-38 (1982). Here, the officers do not dispute that plaintiffs' complaint properly states a section 1983 claim.[2] Rather, they contend only that the Court must dismiss the section 1983 claim as to Officers Bracket, Brown, Jackson-Maulfair, Melby, Nguyen, and Sowers because the

---

[2] Echoing the District, the individual officers argue by incorporation that plaintiffs cannot bring section 1983 claims for violation of the First and Fifth Amendments. See Individual Officers' Mem. in Supp. of Mot. to Dismiss ("Individual Officers' Mem.") [Docket Entry 10], at 1. For the reasons discussed above, plaintiffs' First Amendment claim may proceed, but the Court will dismiss their Fifth Amendment claim.

complaint does not allege misconduct by them. See Individual Officers' Mem. at 4.

A plaintiff may establish a section 1983 claim against an individual police officer in two ways. First, a "plaintiff can show that [the officer] was directly involved in the arrest without probable cause." Fernandors, 382 F. Supp. 2d at 72. Plaintiffs' failure to describe in their complaint any particular conduct by Officers Bracket, Brown, Jackson-Maulfair, Melby, Nguyen, or Sowers precludes them from proceeding on this theory. Second, a plaintiff can show that the officer is liable under a theory of bystander liability. See id. Under that theory, "an officer is held liable for a constitutional violation if he: (1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." See id. (citing Randall v. Prince George's County, Md., 302 F.3d 188, 204 (4th Cir. 2002)); accord Mazloum v. Dist. of Columbia Metro. Police Dep't, 522 F. Supp. 2d 24, 40 (D.D.C. 2007).

Here, William Christopher Malloy alleges that his strip search was conducted in the presence of officers named in the complaint, including Officers Bracket, Brown, and Jackson-Maulfair. Compl. ¶ 26. Similarly, Kevin T. Anderson asserts that his strip search was conducted in the presence of officers named in the complaint, including Officers Melby, Sowers, and Nguyen. Compl. ¶ 33. Reading the complaint as a whole, Malloy and Anderson together have alleged that Officers Bracket, Brown, Jackson-Maulfair, Melby, Sowers, and Nguyen were on the scene when MPD officers conducted the challenged strip searches. And defendants concede that the strip search allegations sufficiently state a predicate constitutional violation. Accepting all "reasonable inference[s]" in plaintiffs' favor, then, the Court concludes that plaintiffs have "plausibly" stated that the officers had a reasonable opportunity to prevent the unlawful strip

searches, yet failed to act. See Iqbal, 129 S. Ct. at 1949. Hence, plaintiffs' section 1983 claims against the individual officers can proceed on a bystander liability theory.

**II.     Plaintiffs' Common Law Claims**

The Court must dismiss all of plaintiffs' common law claims against both the District of Columbia and the individual officers. In their opposition to defendants' motions to dismiss, plaintiffs oppose only defendants' arguments regarding the section 1983 claims. They do not address, or even reference, defendants' arguments regarding plaintiffs' common law claims. "Where a plaintiff addresses some but not all arguments raised in a defendant's motion to dismiss, courts in this district may treat such arguments as conceded." Payne v. Dist. of Columbia, 592 F. Supp. 2d 29, 37 (D.D.C. 2008); accord Fox v. Am. Airlines, Inc., 295 F. Supp. 2d 56, 58 (D.D.C. 2003), aff'd, 389 F.3d 1291 (D.C. Cir.2004); Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002). The Court will do so here, and therefore will dismiss plaintiffs' common law claims.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the District of Columbia's motion to dismiss and the individual officers' motion to dismiss. The common law claims against both sets of defendants will be dismissed. Plaintiffs may proceed with their section 1983 claims against all defendants pursuant to the First and Fourth Amendments. A separate Order accompanies this Memorandum Opinion.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: August 9, 2010